IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CASE NO. 3:23cv41

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>)<br>APPROXIMATELY $106,009.13 IN FUNDS )<br>SEIZED FROM WELLS FARGO ACCOUNT )<br>XXXXX7829, SUCH ACCOUNT HELD IN )<br>THE NAME OF GEORGE DOUBRA DBA )<br>PRESCOTT TRADING. ) | **COMPLAINT FOR<br>FORFEITURE *IN REM*** |

NOW COMES the United States of America, Plaintiff herein, by and through Dena J. King, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

## INTRODUCTION

1. As set forth more specifically below, this action seeks the forfeiture of approximately $106,009.13 in funds obtained after conspirators committed a business email compromise and/or other wire fraud scheme wherein funds were transferred from a victim legitimate Malaysian business to an account held in the name of a fake business controlled by a conspirator, and then moved from that fake business account into the subject account herein, controlled by George Doubra DBA Prescott Trading, another fake business.

2. This is a civil action *in rem* pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C). Procedures for this action are mandated by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and, to the extent applicable, 18 U.S.C. §§ 981, 983, and 984, and the Federal Rules of Civil Procedure.

3. The subject *res* is comprised of the above-captioned $106,009.13 in funds seized from Wells Fargo Account XXXXX7829, such account held in the name of George Doubra d/b/a Prescott Trading. (funds identified as "the Funds"; account identified as "Target Account"). The Funds constitute or are derived from proceeds of wire fraud conspiracy and wire fraud in violation of 18 U.S.C. §§ 371 and 1343, and property involved in money laundering and money laundering conspiracy in violation of 18 U.S.C. §§ 1956, 1956(h), and 1957.

4. This Court has jurisdiction over this action commenced by the United States under 28 U.S.C. § 1345 and over this action for forfeiture under 28 U.S.C. § 1355(a). The Court has in rem jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

5. This Court has venue pursuant to 28 U.S.C. §§ 1355 and 1395. Venue is proper because the acts or omissions giving rise to the forfeiture occurred in this district, the claim accrued in this district, and the Funds were found in this district.

6. Specifically, on or about January 17, 2020, the United States Postal Inspection Service ("USPIS"), acting pursuant to a federal Seizure Warrant (WDNC Case 3:20mj16) for forfeiture, seized the Funds in the Western District of North Carolina. The USPIS in the Western District of North Carolina is currently holding the Funds.

7. Pursuant to Supplemental Rule G(2)(f), facts in support of a reasonable belief that the Government will be able to meet its burden of proof at trial are set forth more fully as follows and have been verified by the attached Verification of United States Postal Inspector Randy Berkland.

## THE INVESTIGATION

8. Beginning no later than approximately 2019, a group of individuals and entities based in Charlotte, North Carolina, and elsewhere (hereafter, "the conspirators") were involved in

fraud and money laundering whereby conspirators opened bank accounts for the purpose of receiving and laundering wire transfers that resulted from federal crimes. Included among the individuals and entities who laundered crime proceeds were Charlotte-based individual, George Doubra ("Doubra"), and Prescott Trading. The crimes that form the basis of the money that Doubra, Prescott Trading, and others have laundered include (1) business email compromise fraud schemes whereby fraudsters use fake email accounts in the names of legitimate vendor companies (such as contractors and suppliers) to dupe victims who owe money to the legitimate vendor companies into wiring money to accounts that the fraudsters have fraudulently opened in the names of these legitimate vendor companies and (2) romance fraud schemes, whereby fraudsters pose via email and other electronic means of communication as individuals interested in romantic relationships with unsuspecting victims—often widowers—and then dupe those victims into sending money to the fraudsters.

9. Specifically, in 2019, Doubra opened in excess of ten bank accounts in Charlotte, North Carolina under various business names for the purpose of receiving wire transfers and laundering money from other bank accounts that received fraudulently obtained wire transfers from victims. The Target Account is one such account.

10. On September 20, 2019, Doubra opened the Target Account with a $14,968.21 cashier's check that was drawn from his other bank account at BB&T which was, like the Target Account, held in the name of Prescott Trading (hereafter, "Prescott Trading BB&T Account"). From February 2016 through August 2019, the Prescott Trading BB&T Account had, in-turn, been funded with wire and cash deposits originating from other identified co-conspirators and from other accounts opened and controlled by Doubra at other banks. For example, the following

3

deposits and wires derived from fraud victims were made into the Prescott Trading BB&T Account:

    a.    On August 9, 2019, the Prescott Trading BB&T account received over $342,000 in cashier's checks that were drawn on the BB&T account of an identified co-conspirator. That account, in the name of a victim identified herein as Victim CT, received an incoming wire from a business in China on August 7, 2019. According to bank records, the sender tried to recall the wired funds, but they had been depleted.

    b.    On August 12, 2019, the Prescott Trading BB&T account received a cashier's check in the amount of $45,000 drawn on the BB&T account in the name of Victim JP DBA JM Co. Victim JP has confirmed that he is an identity theft victim who did not open the account bearing his name.

11. After Doubra used the money from the Prescott Trading BB&T Account to open the Target Account in September 2019, the Target Account received approximately $82,968.21 in deposits from other conspirators in October 2019. Specifically, on October 1, 2019, Doubra deposited a $27,000 cashier's check into the Target Account. The check was drawn on a Wells Fargo account in the name of a victim identified herein as Victim DB dba CS. Victim DB is an identity theft victim who did not open the City Solutions account in his name.

12. After the Target Account was opened and funded, conspirators continued to use Prescott Trading and its accounts to receive and launder wire fraud proceeds that had been deposited into other accounts and transferred to Prescott Trading.

4

13.     Specifically, on December 23, 2019, Michael Ibukun opened Wells Fargo account XXXXXX0203 in Charlotte, North Carolina under the name "DSP Singapore Holdings" (hereafter, "DSP Wells Fargo Account"). The address on the account was listed as 2948 Cross Roads Place #306 in Charlotte, North Carolina. The DSP Wells Fargo Account was funded with an initial $25.00 deposit.

14.     Although Ibukun listed a Charlotte address for DSP, an Internet search confirmed that there is a legitimate business called DSP Singapore Holdings that is actually located in Singapore and not in Charlotte, North Carolina. Further, searches for DSP Singapore Holdings and Michael Ibukun on the North Carolina Secretary of State website produced negative results. Thus, basic public searches reflect that Ibukun opened an account in the name of DSP Singapore Holdings despite the fact that Ibukun bore and bears no relationship to DSP Singapore Holdings.

15.     On December 24, 2019, the DSP Wells Fargo Account received two separate incoming wires in the amounts of $88,510.00 and $210,879.25. The wires were from an entity identified herein as Victim ZSB in Malaysia. An Internet search revealed Victim ZSB is a legitimate business in Malaysia and a supplier of industrial chemicals.

16.     On the same day as the incoming wire transfers, Wells Fargo received a message from the issuing bank in Malaysia attempting to recall one of the wires. The message claimed that the remitter's email was hacked and that the remitter erroneously sent the wires to the DSP Singapore Holdings account owned by Ibukun. A message such as the message received by Wells Fargo is indicative of a fraud in that the sender of the wire has realized the sender has been scammed and, thus, the sender is attempting to recall the funds before they are spent or transferred to other accounts.

17. On December 28, 2019, Wells Fargo issued a cashier's check in the amount of $105,000.00 drawn on Ibukun's DSP Singapore Holdings account. The check was made payable to Prescott Trading and deposited into the Target Account on the same date. Ibukun and Doubra were depicted on bank surveillance video conducting the transaction together.

18. In January, 2020, Wells Fargo placed a hold or freeze on the Target Account. On that day, the account balance was $106,009.13 and consisted primarily of funds derived from the wire from Victim ZSB.

19. The activity in the DSP Wells Fargo Account from September through December is consistent with the activity in the BB&T Prescott Trading Account, another account funded via fraud proceeds. Specifically, fraud proceeds entered the DSP Wells Fargo Account and were quickly moved to another account—here, the Target Account—in a manner consistent with a fraud and money laundering scheme.

20. In January 2020, USPIS obtained a Seizure Warrant for the contents the Target Account and ultimately seized the Funds.

21. Following unsuccessful efforts by banks to reroute the seized funds to the Malaysian victim in this investigation so as to avert the need for judicial forfeiture, Postal Inspector Berkland contacted Doubra via phone on or about January 19, 2023 concerning the funds seized from the Target Account. Doubra advised that he did not have knowledge of the bank account and didn't know what Berkland was talking about, and that Doubra's counsel would be in touch. Inspector Berkland has searched for information on legitimate business conducted by Doubra and/or Prescott Trading, but has not identified any information to suggest that Doubra uses Prescott Trading or the Target Account for legitimate business, or that Doubra engages in any legitimate business with Victim ZSB or with DSP Singapore Holdings.

# CONCLUSION

22. By virtue of the foregoing and pursuant to 18 U.S.C. § 981(b), all right, title, and interest in the Funds vested in the United States at the time of the commission of the unlawful act giving rise to forfeiture and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

2. Judgment be entered declaring the Funds to be condemned and forfeited to the United States of America for disposition according to law; and

3. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Funds as required by 28 U.S.C. § 1921.

Respectfully submitted, this the 25th day of January, 2023.

DENA J. KING
UNITED STATES ATTORNEY

**s/Benjamin Bain-Creed**
FL Bar Number 21436
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Facsimile: (704) 344-6629
Email: benjamin.bain-creed@usdoj.gov

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

## VERIFICATION

Randy Berkland deposes and says under penalty of perjury:

I am a Postal Inspector with the United States Postal Inspection Service and one of the agents assigned to this case.

I have read the foregoing Complaint and the factual information contained therein is true according to the best of my knowledge, information, and belief.

*Randy Berkland*
Randy Berkland
Postal Inspector
United States Postal Inspection Service

8